GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
Because I believe the district court abused its discretion by failing to address the issue of forum shopping in its grant of voluntary dismissal, I respectfully dissent from the bulk of the court’s opinion. While I would find it unnecessary to reach the alternative question of whether the district court likewise abused its discretion in granting dismissal without explaining why costs and fees were not awarded, given the court’s holding on the first issue, I agree that it was impermissible for the district court to ignore this consideration and, thus, join that portion of the opinion.
*517 Appellee Michael Blaes initially brought this product-liability action against nine corporate defendants in the Circuit Court of St. Louis. County, alleging that his wife died from ovarian cancer caused by various products containing talcum powder. The defendants were served on January 24, 2014 and timely removed the case to federal district court. After initially moving to remand based on a lack of complete diversity, Blaes conceded that his claims against the diversity-destroying defendants were barred by the Innocent Seller Statute, dismissed these claims, and withdrew his request to return to state court. See Mo. Rev. Stat. § 537.762. Thereafter, the only remaining defendants were two Johnson & Johnson entities and Imerys Talc America, Inc. (collectively, “J&J”). The district court then entered a case-management order, setting a jury trial to begin on March 7, 2016. Over the intervening months, the parties completed twenty-four depositions, fully briefed J&J’s Dau-bert and summary judgment motions, and resolved several other issues through motions practice. Of note, the district court denied Blaes’s motion to compel entry to several J&J facilities and granted J&J’s motions to strike two of Blaes’s expert witnesses.
On January 28, 2016, the attorneys in this matter began a separate multi-plaintiff trial involving similar talcum-power product-liability claims in the Circuit Court of the City of St. Louis. The case, Hogans v. Johnson &Johnson, joined sixty-four unrelated individuals from twenty-nine states with one St. Louis City resident. No. 1422-CC09012-01 (Mo. Cir. Ct. 22d Sept. 29, 2014). Because the first trial focused on Alabama resident Jacqueline Fox’s claims, this litigation is often associated with her name. After the Fox trial was underway, Blaes’s counsel approached J&J with multiple requests to postpone the trial date. The defendants refused, however, insisting that the case was ready for trial.
Blaes then requested—and the district court ordered—a status conference to occur on February 12, 2016. At the meeting, the court informed Blaes’s counsel that they would be allowed only two or three expert witnesses and that, in light of prior talcum-powder trials, the case should be streamlined. The court also noted that Blaes should not elicit repetitive testimony on the same issues. After receiving this guidance, Blaes asked for a continuance with leave to reopen discovery. The district court granted this request and entered an order resetting trial for July 6, 2016.
On March 9, 2016, J&J moved to reset Blaes’s trial date due to a scheduling conflict with another talcum-powder trial setting in New Jersey.[5] Blaes responded with a motion to voluntarily dismiss the case without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). The motion failed to include any justification as to why dismissal was appropriate, but it is telling that the Fox jury found against J&J only two weeks earlier and awarded Fox $10 million in compensatory damages and $62 million in punitive damages. J&J opposed dismissal, arguing that the case was ready for trial, that the court had already excluded two experts, and that Blaes’s primary reason for dismissing the case was forum shopping. J&J alternatively requested that the district court impose several conditions on dismissal, including that Blaes pay its fees and costs. In his reply brief, Blaes confirmed that he in *518 tended to refile in state court, stating that he “believe[d] he [could] try his case starting January 9, 2017 as one of multiple consolidated trial plaintiffs” in Swann v. Johnson & Johnson—another multi-plaintiff talcum-powder case pending in the St. Louis City Circuit Court. See No. 1422-CC09326-01 (Mo. Cir. Ct. 22d Dec. 5, 2014).
Four days later, before J&J could seek leave to file a sur-reply, see E.D. Mo. L.R. 4.01(C), the district court granted Blaes’s motion to dismiss. In a two-page memorandum, the court suggested that dismissal was proper “because this case will likely be refiled and consolidated with Swann ... [and] it makes sense for the state court to hear a multi-plaintiff trial regarding the same type of ovarian cancer.” Yet the court failed to mention J&J’s forum-shopping claim, and it discussed only scheduling considerations in concluding that dismissal would not prejudice J&J.
J&J timely appealed this order. Meanwhile, the St. Louis City Circuit Court granted the Swann plaintiffs leave to file an amended petition adding Blaes and eleven other non-residents as intervenors. As J&J notes, however, the Swann court also ordered that the January 9, 2017 trial would be a single-plaintiff trial chosen by defendants, thereby undermining Blaes’s efficiency rationale for dismissal of this case. To date, nearly fourteen months after the district court granted Blaes’s motion to dismiss, his trial still has not commenced in the St. Louis City Circuit Court.
My primary concern with the court’s approach is that it harkens back to an overly permissive standard for voluntary dismissals that we long ago abandoned. “At common law, dismissals without prejudice were, in general, freely allowed at any time before the case was ready for decision.” Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984). However, “[t]he adoption of Rule 41(a) in 1938 completely changed this practice. The rule limits the right of dismissal at the behest of the plaintiff to the early stages of the proceedings, thus curbing the abuses of this right that commonly had occurred under [the earlier approach].” 9 Charles Alan Wright et al., Federal Practice and Procedure § 2363 (3d ed. 2017). Thus, the current version of Rule 41(a)(2) provides that, after a defendant serves its answer, “an action may be dismissed at the plaintiffs request only by court order, on terms that the court considers proper.” We have previously held that district courts entertaining such requests must consider: “[1] whether the party has presented a proper explanation for its desire to dismiss; [2] whether a dismissal would result in a waste of judicial time and effort; and [3] whether a dismissal will prejudice the defendants.” Donner v. Alcoa, Inc., 709 F.3d 694, 697 (8th Cir. 2013) (citation omitted).
J&J’s main argument is that the district court abused its discretion in granting dismissal without sufficiently examining the first of these factors—whether Blaes had presented a proper explanation for his request. Specifically, J&J contends that the district court was required to examine the viability of Blaes’s plan to dismiss and refile and whether his real motive was to defeat its attempt to remove the case to a federal forum, particularly in light of the $72 million judgment in Fox and Missouri’s relatively lax expert-witness standard. See State Bd. of Registration for the Healing Arts v. McDonagh, 123 S.W.3d 146, 153, 155-56 (Mo. 2003) (en banc) (holding that Mo. Rev. Stat. § 490.065, rather than Daubert, supplies the standard for the admission of expert testimony in civil cases in Missouri). I share this concern and believe that, at the very least, the district court should have addressed J&J’s forum-shopping argument.
*519 We have repeatedly held that “a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum,” Dormer, 709 F.3d at 697 (citations omitted), and we have reversed a number of orders granting motions for voluntary dismissal when the overall circumstances indicate forum shopping as a motive, see, e.g., id. at 699 (listing cases). As we explained in Thatcher v. Hanover Insurance Group, Inc., this rule is particularly important in the removal context because the rule against voluntary dismissal for a more favorable forum “coincides with other measures which strike a balance between the plaintiffs right to select a particular forum and the defendant’s right to remove the case to federal court.” See 659 F.3d 1212, 1214 (8th Cir. 2011) (citations and internal quotation marks omitted). Thus, given that the district court’s decision to grant dismissal effectively overrode J&J’s right to remove this case to federal court, it is especially problematic that the district court failed to address J&J’s forum-shopping claim.
The court avoids this difficulty by suggesting that “the district court implicitly rejected defendants’ argument that Blaes was forum shopping,” apparently by finding that dismissal would advance both parties’ interest in a speedy trial. Ante, at 514. As an initial matter, I note that Blaes provided absolutely no reason for dismissal in his initial motion. See Donner, 709 F.3d at 699. Only in reply to J&J’s motion in opposition to dismissal did Blaes finally assert his timeliness and efficiency justifications for allowing him to refile in state court. However, I am not convinced that, “[b]y finding that Blaes’s stated purpose was proper,” the district court was entitled to conclude that he necessarily was not forum shopping. Id. A plaintiff certainly could assert a legitimate reason for voluntary dismissal while his or her true motive lay in securing a more favorable forum. Further, I reject the notion that we automatically should deem an argument to have been considered by a district court simply because it was raised in briefing. Otherwise, it is unclear to me how we ever could find that the court had abused its discretion by failing to consider “a relevant factor that should have been given significant weight.” See Mullen v. Heinkel Filtering Sys., Inc., 770 F.3d 724, 727-28 (8th Cir. 2014).
Most importantly, however, even assuming that allowing Blaes to refile in state court would result in a faster and more efficient trial, the court fails to recognize that granting dismissal also defeated J&J’s right to a federal forum. Based on the jurisdictional nature of this consideration, we have previously held that district courts must address forum-shopping concerns before granting a motion to dismiss:
[T]he determination of whether the motion to dismiss was an improper forum-shopping measure, by its very nature, called into question the trial court’s subject matter jurisdiction. Defendants exercised their right to removal under [diversity jurisdiction], and [the plaintiff] appears to have sought dismissal merely to deprive the federal court of jurisdiction. As a result, determining whether the district court had subject matter jurisdiction was at the crux of the issue of whether the motion to dismiss was being used for the improper purpose of seeking a more favorable forum. The district court erred in failing to take up the jurisdictional question, thereby necessitating remand of this matter.
Thatcher, 659 F.3d at 1215.[6] Indeed, if there is any question about the importance *520 of an out-of-state defendant’s right to remove a ease from state court or the fundamental nature of federal diversity jurisdiction, one need look no further than Article III of the Constitution and the ratification debates.
See U.S. Const, art. III, § 2 (creating diversity jurisdiction); The Federalist No. 80 (Alexander Hamilton).
Given its failure to address this weighty concern, I would find that the district court abused its discretion and would remand for consideration of J&J’s forum-shopping argument. Although I believe this alone is a sufficient basis for reversal, I also question whether the district court sufficiently addressed the other two mandatory considerations for granting voluntary dismissal under Rule 41(a)(2)—wheth-er dismissal would result in a waste of judicial time and effort and whether it would prejudice the defendants. See Donner, 709 F.3d at 697. While the court is correct that a loss of tactical advantage is by itself insufficient to defeat a motion for voluntary dismissal, see Mullen, 770 F.3d at 728, it is equally true that “a party is not permitted to dismiss merely to escape an adverse decision,” Donner, 709 F.3d at 697 (citation and internal quotation marks omitted). As noted above, Blaes encountered various setbacks in more than two years of litigation before the district court, including the denial of his motion to compel entry and the grant of J&J’s motions to strike two of his expert witnesses. Thus, just as the court concluded with respect to costs and fees, I believe a fuller explanation was required to conclude that dismissal would not waste judicial resources or impermissibly prejudice J&J.
Accordingly, I respectfully dissent from the court’s decision to affirm voluntary dismissal and concur in its reversal as to the denial of J&J’s motion for costs and fees.

. The court reads this filing to suggest that J&J "would be unavailable for trial in this case until after February 2017.” Ante, at 512. Yet the basis for this conclusion is unclear to me; as it appears that J&J’s schedule left sufficient time for a three-week trial in August and September or October through December of 2016.

. Our previous opinions in Kern v. TXO Production Corp. and Mullen v. Heinkel Filtering *520 Systems, Inc. appear to support the court’s position at first glance. However, there was no forum-shopping concern raised in Kern, and our decision in Thatcher controls as an earlier-in-time opinion to the extent it conflicts with Mullen. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel ... [and as such,] when faced with conflicting panel opinions, the earliest opinion must be followed....” (citations and internal quotation marks omitted)).